IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


FERRARI IMPORTING COMPANY )
d/b/a GAMMA SPORTS )
)     Civil Action No. 09-227
)     Magistrate Judge Lisa Pupo Lenihan
Plaintiff, )
)     Doc. No. 6
v. )
)
UNIQUE SPORTS PRODUCTS, INC. )
)
Defendant. )


**MEMORANDUM OPINION**


**I.  CONCLUSION**

For the reasons set forth below, the Defendant's Motion to Dismiss or to Transfer (Doc.

No. 6) will be granted in the form of discretionary transfer of this action to the United States

District Court for the Northern District of Georgia under 28 U.S.C. § 1404(a).

**II. FACTUAL BACKGROUND**

In April, 1999, Unique Sports Products, Inc. ("Unique"), a Georgia corporation which

markets and distributes its tennis racquet "grip tape" products nationwide,[1]  filed a complaint in

---

1.  Defendant's products are sold in sporting goods stores and general retailers, and on the
internet.  See Defendant's Memorandum of Law In Support at 2.

the Northern District of Georgia against Ferrari Importing Company, d/b/a Gamma Sports ("Gamma"), a comparatively small, family-owned Michigan corporation with its principal place of business in Pennsylvania, and national marketing and distribution of tennis racquet tape products.[2]  See Complaint at Unique Sports Products, Inc. v. Ferrari Importing Co., d/b/a Gamma Sports, Civil Action No. 99-CV-0945.  Unique alleged that Gamma's production of racquet grip tapes in a light blue color infringed upon its trademark.[3]

On June 18, 1999, the parties entered into a Consent Final Judgment in settlement of that litigation.  Gamma was enjoined from seven practices, including the use of (a) the Specified Light Blue Color, defined as "any *overwrap* grip material having any blue color light than the color designated as 923(c) in the Pantone Color Selector and [having] speckles and a chamois surface texture like the light blue overwrap grip material that [Unique was] selling under its 'Tourna Grip' mark"; and (b) "any other counterfeit, copy or colorable imitation thereof, in any form, or in any manner in connection with overwrap grip material for sports racquets."[4]  The parties further agreed, however, that "except for the overwrap grip material immediately defined above, [the Judgment] neither limits the color of any grip or overwrap grip material that [Gamma] presently uses or may use in the future, nor does it limit [Unique's] right to object to or

---

2.  Gamma's products include royal blue colored racquet grip tapes.  See Defendant's Memorandum of Law in Support at 3.

3.  Unique asserts that it has used the light blue color for its racquet grip tape products since 1977, and has continuously used that color as a source identifier.  Its "Tourna-Grip" product is the best selling racquet grip tape in the United States.  See Defendant's Memorandum of Law in Support at 2. Cf. Complaint at 1 ("Because blue is the favored color of a majority of men and a significant percentage of women, it is a very valuable color in the marketplace . . . .").

4.  Plaintiff's Memorandum of Law in Opposition at 7 (quoting Consent Final Judgment (the "Consent Judgment")) (emphasis added).  Gamma was also generally enjoined from, *e.g.*, the use of confusingly similar terms, marks, or names in connection with overgrip wraps.

file suit over the color of any grip or overwrap material that [Gamma] presently uses or may use in the future."[5]

Finally, under the Consent Judgment, the District Court for the Northern District of Georgia expressly retained jurisdiction "for the purpose of making or entering any further orders necessary or proper for the construction or modification of this Final Judgment, the enforcement hereof, or the punishment of any violations thereof by [Gamma]".  Id.

In February, 2001, Unique obtained a trademark registration, No. 2,428,076 for the light blue color used for its "grip tape for sports rackets".  Defendant's Memorandum of Law in Support at 1.  Unlike the specification in the Consent Judgment, this registration is not restricted by speckles or surface texture.  See Plaintiff's Memorandum of Law in Opposition at 8.

In October, 2002, Unique gave notice to Gamma that it believed the latter was infringing on its trademark through the sale of Overgrip tapes in the light blue color, and the parties were able to reach an accord.  Again in August, 2003, Unique notified Gamma that its "Supreme Overgrip Tape" was in violation of the Consent Judgment,[6] and again the parties we able to resolve their dispute.[7]

By correspondence of August 26, 2008, Unique again notified Gamma that it was in violation of Unique's rights in the light blue color.  Unique asserted that Gamma was producing at least two light blue products - a "Smart Grip Overgrip Tape" and a "Gauze Tape" - which

---

5. Id.

6. This correspondence notes that violation could make Gamma liable for trademark infringement and breach of contract, as well as contempt of court.

7. See Defendant's Memorandum of Law in Support at 4 ("In each occurrence up to August 2008, Unique was able to settle its claims against Gamma without resorting to litigation."); Gamma's Complaint at 6-7.

infringed upon Unique's trademark and/or violated the prior Consent Judgment.[8]  It requested a response within ten (10) business days.   On October 1, 2008, Gamma, while *not* conceding that the Overgrip Tape was within the scope of the Georgia Court's  injunction,[9] replied that (a) its blue color *was* lighter than intended, and that it was willing to discontinue production, destroy the units in its inventory, and "discontinue the sale of overgrip [tape] under that product name entirely in order to avoid additional litigation between the parties"; and (b) the Gauze Tape was outside the scope of the injunction and the same non-infringing blue color it had been for decades. The letter requested response to Gamma's offer at Unique's earliest convenience. Defendant's Reply Memorandum of Law at 2-3 (quoting correspondence); Letter of October 1, 2008.

On January 15, 2009, Unique responded that (a) there was "no good faith basis [for Gamma's] attempt to link the resolution of the [Overgrip] product issue with the Gauze Tape issue", and (b)  as to the Gauze Tape, it would allow a commercially reasonable sell-off period for that light blue tape and Gamma's change to a darker royal blue color in exchange for legal fees.  It concluded that "[i]f Gamma would prefer to resolve this issue through litigation, Unique will go that route", and it again requested a response within ten (10) business days, *i.e.*, on or before January 29th.

Although the terms offered in Gamma's October letter are arguably ambiguous, Unique's last correspondence communicated, expressly, its understanding that the terms of that settlement

---

8.  Overwrap tape is generally a thicker, softer and more absorbent racquet wrap product (not coated with adhesive), while gauze tape is generally a thinner, porous, non-absorbent, rough, adhesive-coated wrap product.  See Complaint.

9.  Cf. Plaintiff's Sur-Reply Brief in Opposition at 3 & n.5 (indicating that Gamma did not admit that its Overgrip Tape was in breach of the Consent Judgment).

offer were *linked*, *i.e.*, that Gamma would *only* destroy and discontinue manufacture of the light

blue Overgrip Tape *if* Unique agreed that it could continue manufacture and sale as to the light

blue Gauze Tape.  Gamma did not give any subsequent indication that Unique misunderstood its

offer, or that it would unilaterally destroy/discontinue its light blue Overgrip Tape, without regard

to the parties' resolution of the light blue Gauze Tape.  Gamma provided no reply to Unique's

letter of January, 2009; it did not notify Unique that Gamma intended to discontinue

correspondence and file suit.  Rather, on February 23, 2009 Gamma filed this declaratory

judgment action, seeking only a declaration that its Gauze Tape (a) is not in violation of Unique's

registered trademark, because its "registered 'light blue' color" is invalid and unenforceable (for

reasons including alleged misrepresentations regarding the historic use of that color on gauze

tapes in Unique's registration application), and (b) is non-infringing under federal and common

law.  See Complaint at 2.[10]  Gamma now maintains that the parties' dispute regarding light blue

Overwrap Tape had been resolved.[11]

    Approximately two weeks later, on March 10, 2009, Unique filed an action against

Gamma in the Northern District of Georgia, alleging that (1) Gamma's light blue Overgrip Tape

and Gauze Tape each infringe on Unique's trademark and violate the false designation of origin

provisions of the Lanham Act, (2) the light blue Overgrip Tape also violates the Consent

Judgment, and (3) Gamma's light blue tapes violate Georgia's Uniform Deceptive Trade Practices

---

10.  Unique asserts that it was not served until April 20, 2009, and that the Waiver of Service
request mailed to its attorneys by Gamma in March, 2009 was "internally misplaced".  See
Defendant's Memorandum of Law in Support at 5; Plaintiff's Memorandum of Law In
Opposition at 1-2, 6; Defendant's Reply Memorandum of Law at 4.

11.  See, *e.g.*, Plaintiff's Memorandum of Law In Opposition at 2 (asserting that "Unique
dropped this claim from the pre-litigation settlement discussions between the parties").

Act.[12]  Gamma's motion for dismissal or transfer of that action was filed on May 1, 2009 and

submitted to District Judge Ward on June 10, 2009.  <u>See</u> Civil Docket for Case 09-CV-660.

Although the Court cannot accept Defendant's assertion that the Northern District of

Georgia is the only proper venue for this action, it does conclude, after consideration of the

appropriate factors, that the case should be transferred, and that the Northern District of Georgia

is the more appropriate forum.


## III.  <u>MOTIONS TO DISMISS OR TO TRANSFER</u>

The Court considering the motion to dismiss "must accept as true the factual allegations

in the complaint and all reasonable inferences that can be drawn therefrom."  <u>Nami v. Fauver</u>, 82

F.3d 63, 65 (3d Cir. 1996).

The statutory provisions applicable to transfer of venue herein are as follows:

Section 1404(a) authorizes a District Court with proper venue to transfer a case to

another District Court "for the convenience of the parties and witnesses" and "in the interest of

justice." Although "a plaintiff's choice of venue should not be lightly disturbed", the Court must

also consider a variety of other private and public factors. <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d

873, 879 (3d Cir. 1995).[13]  The private interests include the parties' preferences, the convenience

---

12. <u>But see</u> Unique's September 29, 2006 Motion in Limine filed in <u>Unique Sports Products,</u>
<u>Inc. v. Babolat VS</u>, <em>et al</em>, Northern District of Georgia, 02-CV-2947 (attesting that the colors of
"non-competitive products" including, <em>e.g.</em>, <em>gauze tape</em>, were irrelevant to litigation of
infringement of Unique's registered "Light Blue Color Mark", which only concerned overgrips).

13. <u>Cf.</u> <u>Gallant v. Trustees of Columbia University in the City of New York</u>, 111 F.Supp.2d 638,
647 (E.D. Pa. 2000) (noting that plaintiff's choice of forum is given less weight where "few, if
any, of the operative facts took place in [that] forum . . . and the defendant has indicated strong

(continued...)

of the parties, the unavailability of witnesses for trial, and the situs of books and records.  Id.

(citing 15 Wright, Miller & Cooper § 3848-3853).[14]  Applicable public factors include the

enforceability of the judgment; factors that could make the trial easier, more expeditious, or less

expensive; relative administrative difficulties pertaining to court congestion; "the local interest in

deciding local controversies at home"; the public policies of the fora; and the familiarity of the

trial judge with applicable state law in diversity cases.  Jumara, 55 F.3d at 879 (citing Wright,

Miller & Cooper § 3854).  See also id. (noting that the courts should "consider all relevant factors

to determine whether on balance the litigation would more conveniently proceed and the interests

of justice be better served by transfer to a different forum") (citing Wright, Miller & Cooper, §

3847); Elan Suisse Ltd. v. Christ, 2006 WL 3838237, *3 (E.D. Pa. Dec. 29, 2006) (noting that

district courts have broad discretion to adjudicate transfer "according to an 'individualized, case-

by-case consideration of convenience and fairness'") (quoting Stewart Org., Inc. v. Ricoh Corp.,

487 U.S. 22, 29 (1988)).

        In comparison, Section1406(a) authorizes transfer or dismissal when venue is *improper*.[15]

See, *e.g.*, Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962) (concluding that discretionary

_____

13.  (...continued)
 preference for another district") (citing National Mortgage Network v. Home Equity Ctr., 683
 F.Supp. 116, 119 (E.D. Pa. 1988)).

14.  See also American Littoral Soc. v. U.S. E.P.A., 943 F.Supp. 548, 550 (E.D. Pa. 1996);
Molnlycke, 64 F. Supp.2d at 455 (concluding that transfer to New York was appropriate where
many records were retained there, location was more proximate to witnesses who would be
deposed, unquantified additional cost to plaintiff was insufficient to block transfer, and plaintiff
did not indicate it would rather have case dismissed than transferred).

15.  "The District Court of a district in which is filed a case laying venue in the wrong division or
district shall dismiss or if it be in the interest of justice, transfer such case to any district or
division in which it could have been brought."  28 U.S.C. § 1406(a).

transfer under § 1406(a) does not require personal jurisdiction); Andrews v. Compusa, Inc., 2000 WL 623234, *3 (E.D. Pa. May 12, 2000) (collecting cases from other jurisdictions holding that § 1406(a) permits transfer absent personal jurisdiction).  The Third Circuit has suggested that § 1406(a) is not only an appropriate basis for transfer in the event of improper venue, but that - like § 1404(a) - it may also be used where venue is *proper*.  See Carteret Savings Bank v. Shushan, 919 F.2d 225, 231 & n. 11 (3d Cir. 1990) (discussing previously "inconsistent conclusions" amongst district courts "on the question of whether § 1406(a) authorizes a transfer when venue is proper").[16]  If venue is proper, however, transfer under § 1406(a) requires the plaintiff's consent. Id. (explaining that this is so because the expansive reading of § 1406 is adopted as an equitable remedy to protect plaintiff from the running of the statute of limitations in another forum).

## IV.  ANALYSIS

### A.  Application of Section 1406

Plaintiff has made a *prima facie* showing that the Defendant is properly subject to personal jurisdiction under the law of the state where this Court sits, *i.e.*, Pennsylvania. Defendant

---

16.  See also Imundo v. Pocono Palace, Inc., 2002 WL 31006143, *3 (D.N.J. Aug. 14, 2002) (understanding Carteret to read the language of §1406 -specifically, the term "wrong district" - to "appl[y] to any obstacle which prevents an orderly, expeditious, adjudication of a case on its merits, including lack of personal jurisdiction *in an otherwise correct venue*") (emphasis added). The Circuit Courts' varyingly broad interpretations of § 1406, and the ensuing interpretations of those interpretations, have been somewhat opaque. Cf. generally, Antony L. Ryan, Principles of Forum Selection, 103 W. Va. L. Rev. 167, 179-180 (Winter 2000) (discussing blurring distinction between personal jurisdiction and venue).

does not dispute its residence in Pennsylvania, nor does it dispute that this Court is a proper venue on grounds other than that the Northern District of Georgia retained jurisdiction over matters related to the Consent Judgment.  See Defendant's Memorandum of Law in Support at 6-13.

Where, pursuant to a settlement agreement between the parties to a product infringement dispute, a Court has expressly retained jurisdiction to enforce, *e.g.*, its Consent Judgment, an action predicated on the subsequent introduction of a product arguably in violation of that agreement should be brought before *that* Court. Thus Courts have held that a declaratory judgment action brought in another forum is therefore in the wrong venue and may be transferred under 28 U.S.C. § 1406.  See, *e.g.*, Zacklift International, Inc. v. Koomia, 2008 WL 4546967 (E.D. Wash. Oct. 6, 2008).  Other Courts, including some in this Circuit, have - in the related circumstance of settlement agreements[17] - considered the express or implicit mandatory nature of the language and adjudicated transfer under the discretionary provisions of § 1404.  See, *e.g.*, Campanini v. Studsvik, Inc., 2009 WL 926975 (E.D. Pa. Apr. 6, 2009).[18]

Where, however, the subsequent declaratory judgment action brought in another forum pertains *solely* to a product which is *outside* the Consent Order, it is *clear* that venue is not

---

17.  See Kane v. Manufacturers Life Insur. Co., 2009 WL 78143 (D.N.J. Jan. 9, 2009) (agreeing that "jurisdictional retention provision in a stipulated settlement falls under the same analytical rubric as does a contractual forum selection clause") (citing McDowell v. Phila. Housing authority, 423 F.3d 233, 240 (3d Cir. 2005)).

18.  See also Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1009 (3d Cir. 1980) (noting that Court's paramount consideration is the intent reflected in the language).  The Courts have found unambiguous language referencing only one jurisdiction to intend mandatory forum selection in the absence of terms such as "exclusive" or "sole".  See, *e.g.*, Integrated Health Resources, LLC v. Rossi Psychological Group, P.A., 537 F.Supp.2d 672, 676 (D.N.J. 2008) (noting that language did not appear ambiguous and that even if it were, parties' intent to recognize exclusive forum was not).

improper.  In this case, as discussed above, Gamma's Complaint goes only to the issue of

trademark infringement by its manufacture of light blue Gauze Tape, a product defined out of

scope of the parties' Consent Judgment regarding overgrip Tape.[19]  Accordingly, this Court is not

an improper venue for Gamma's limited declaratory judgment action, and § 1406 is inapplicable.[20]

### B.  Other Transfer Analysis, Including Application of Section 1404(a)

At present, then, are two pending and partially-overlapping actions:  This declaratory

judgment action regarding trademark infringement brought by Gamma and Unique's action for

Lanham Act violations, violation of the consent judgment, and the alleged violation of Georgia

statutory law, brought in the District Court for the Northern District of Georgia approximately

two weeks later.

### 1.  First Filed Rule

In general, under the "first filed" rule, "where there are parallel proceedings in different

federal courts, the first court in which jurisdiction attaches has priority to consider the case."

FMC Corp. v. AMVAC Chem. Co., 379 F.Supp.2d 733, 737 (E.D. Pa. 2005).  The rule is

"grounded on equitable principles" of encouraging "sound judicial administration" and

"promot[ing] comity".  That is, it is intended to "promote efficiency in the federal trial courts by

avoiding duplicative litigation."  Optical Recording Corp. v. Capitol-EMI Music, Inc., 803

---

19.  Cf.  Plaintiff's Memorandum of Law in Opposition at 6 (asserting that Defendant is
attempting transfer by relying on a retention of jurisdiction clause involving a different product).

20.  Cf. Kane, 2009 WL 78143 at *4-5 (concluding that jurisdiction retention clause in
settlement agreement did not control where action did not involve interpretation of settlement
with which "parties indusputably complied").

F.Supp. 971, 973 (D. Del. 1992) (citing <u>Berkshire Inter. Corp. v. Marquez</u>, 69 F.R.D. 583, 586 (E.D. Pa. 1976).

    a. <u>Gamma's Conduct</u>

District Courts have discretion to depart from the first filed rule in appropriate circumstances, such as inequitable conduct, bad faith, or forum shopping. <u>EEOC v. Univ of Pa.</u>, 850 F.2d 969, 971-72 (3d Cir. 1988). And the Courts have rejected application of the rule where "the first-filing party initiated suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum." <u>Id.</u> at 976.

In their competing analyses of the first filed rule, the parties raise the implications of Gamma's conduct. More particularly, Unique asserts that Gamma's filing was an improper tactical maneuver, while Gamma maintains that its initiation of litigation was an appropriate defensive measure.

Gamma's filing of this declaratory judgment action in Pennsylvania, despite the parties' prior litigation of significantly similar disputes regarding light blue tennis racquet tape in Georgia, certainly suggests a desire to avoid that forum. Its timing does, however, distinguish it from those cases in which the party "on notice" of an imminent suit, engaged in procedural gamesmanship by filing before the expiration of the good faith negotiation response deadline. <u>Compare</u> Defendant's Memorandum of Law in Support at 10-11 (citing cases in which the Court rejected first-filed preference where plaintiff filed suit *prior* to expiration of negotiation response deadline presented by opposing party).[21] The Court observes that, although the time period for

---

21. <u>See</u> Plaintiff's Memorandum of Law In Opposition at 5. <u>Compare</u>, *e.g.*, <u>IMS Health, Inc. v. Vality Technology, Inc.</u>, 59 F.Supp.2d 454 (E.D. Pa. 1999) (applying first filed rule where

(continued...)

response set forth in Unique's last letter had expired, (1) Gamma failed to provide *any* response to Unique's last letter prior to filing its declaratory judgment; and (2) the prior history of negotiated settlements between the parties, and the more recent history of correspondence between the parties (*e.g.*, one to two months between letters, with negotiations continued by replies past requested response dates) certainly suggest that Unique was delaying filing on a reasonable belief that Gamma was still considering settlement terms four (4) weeks later, and that ligation might - as it

---

21.  (...continued)
 numerous deadlines were set and passed without consequence); <u>Oak Assoc. v. Palmer</u>, 2006 WL 293385 (E.D. Pa. Feb. 7, 2006) (applying rule where deadline passed and action was filed twelve days later).

had in the past - be avoided.[22]  Cf. Eveready Battery Co. v.L.P.I. Consumer Prods, Inc., 464

F.Supp.2d 887, 891 (E.D. Mo. 2006) (discussing case in which "[t]he court found it objectionable

that Eveready failed to give [the party with which it was negotiating settlement] notice of its

decision to [file a declaratory judgment action] rather than settle"); id. (declining jurisdiction and

transferring declaratory judgment action filed subsequent to deadline set forth in defendant's

cease and desist letter).[23]  It also observes, however, that Unique threatened litigation and

Gamma's action was filed almost four (4) weeks after Unique's response date had passed.  Thus,

although Gamma's conduct suggests at least partial improper motivation, it is, on the whole and in

light of the applicable case law, less clearly procedural gamesmanship in violation of the first

filed rule.  See Plaintiff's Memorandum of Law in Opposition (citing cases).[24]  But whether or

not Gamma's conduct alone would be a sufficient basis, other considerations weigh in favor of

transfer in this case.

---

22.  See Plaintiff's Memorandum of Law In Opposition at 2-3 (noting that the parties exchanged
letters over the course of *five* months "in an attempt to explore the merits of Unique's claims and
to determine whether a compromise could be reached short of litigation").

23.  As other Courts have observed, the Declaratory Judgment Act was meant to provides parties
accused of infringement an escape from the *in terrorem* choice of either (a) risking growing
potential liability for infringement or (b) abandoning their enterprises when they were threatened
by a party which then "refused to grasp the nettle and sue".  It was not intended to be used as an
"offensive tactic", to "preempt the 'natural plaintiff' in its choice of forum".  See National Foam,
Inc. v. Williams Fire & Hazard Control, Inc., 2997 WL 700496, *9 (E.D. Pa. Oct. 29, 1997)
(granting transfer of declaratory judgment action first filed by alleged infringer); see also 10A C.
Wright, A. Miller and M. Kane, *Federal Practice and Procedure* § 2751 at 569 (1983).

24.  But cf.  World's Finest Chocolate, Inc. v. World Candies, Inc., 409 F.Supp. 840 (N.D. Ill.
1976) (concluding that initiation of cancellation petition in United States Patent and Trademark
Office was in violation of Court's prior consent judgment in trademark infringement action,
which was *res judicata*); id. at 845 (finding contempt where (a) District Court retained
jurisdiction in prior infringement act, "for the purpose of the enabling parties to apply to it for
such orders or modifications which might be necessary"; and (b) defendant, upon notification of
alleged violation, initiated petition in another forum, rather than returning to said Court).

b.  "Truly Duplicative" Litigation; Judicial Economy

In addressing the first filed rule, the Court must also consider "whether the proceedings are 'truly duplicative', that is, [whether] the later-filed case [is] 'materially on all fours' with the previously filed action."  Grider v. Keystone Health Pan Cent., Inc., 500 F.3d 322, 333 n. 6 (3d Cir. 2007) (quoted in Photomedex, Inc. v. St. Paul Fire & Marine Insurance Co., 2009 WL 2326750, *5 (E.D. Pa. 2009)).  See also Grider, 500 F.3d at 333 n. 6 (holding that the "issues must have such an identity that a determination in one action leaves little or nothing to be determined in the other"); Kedia v. Jamal, 2007 WL 1239202, *3 (D.N.J. Apr. 25, 2007) (noting that this Circuit "has interpreted the first-filed rule narrowly, holding that it only applies to truly duplicative proceedings").

The declaratory action *sub judice* and the action for trademark infringement and violation of the consent judgment do not appear to be "truly duplicative".  To the contrary, were this Court to decide Gamma's declaratory judgment action, the question of whether Gamma's manufacture of light blue Overgrip Tape constitutes a violation of the Consent Judgment (*i.e.*, legal and factual issues concerning the scope of that judgment) would remain unresolved .[25]  Any judgment this Court issued would not fully resolve the parties' current disputes, but would leave the Consent

---

25.  Gamma's protestations notwithstanding, the parties' prior communications do not indicate that this matter was settled.  See discussion *supra*. And, given, the language of the Consent Judgment (including that enjoining colorable imitations), the Court cannot accept Gamma's assertion that "[o]n its face, Gamma does not violate the terms of the Consent Final Judgment." Plaintiff's Memorandum of Law In Opposition at 9.

Judgment claim for the Georgia District Court to consider. <u>Compare</u> <u>Grider</u>, *supra* (discussing Third Circuit's requirement under first filed rule).[26]

In addition, recognized exceptions to the first-filed rule also permit departure based on general considerations of "judicial and litigant economy" and the "just and effective disposition of disputes." <u>Serco Servs. Co., L.P. v. Kelley Co., Inc.</u>, 51 F.3d 1037, 1039 (Fed.Cir. 1995) (indicating that trial court may in its discretion determine that first-filed preference should yield to the forum in which all interests are best served") (quoting <u>Genentech, Inc. v. Eli Lilly & Co.</u>, 998 F.2d 931, 937 (Fed. Cir. 1993), *cert. denied*, <u>Regents of Univ. of Cal. v. Genentech, Inc.</u>, 510 U.S. 1140 (1994)); <u>Genetech</u>, 998 F.2d at 938 (discussing considerations such as whether "the importance of conservation of judicial resources and the comprehensive disposition of litigation" would "make it unjust or inefficient to continue the first-filed action").[27]  And the Court

---

26.   <u>Cf.</u> <u>World's Finest Chocolate</u>, 409 F.Supp. at 845 (noting that Court need not find infringement in trademark sense to find violation of prior consent judgment; <u>Pusey v. Estate of Papas</u>, 1999 WL 1241070, *5 (Del Super.Ct. Sept. 23, 1999) (deferring to court that oversaw settlement where action necessarily involved interpretation of that agreement); <u>Photomedex</u>, 2009 WL 2326750 at *5 (observing that declaratory judgment action and action including claim for violation of settlement agreement were overlapping but not entirely duplicative, and that Eastern District Court lacked jurisdiction over second issue owing to forum selection clause in agreement); <u>but cf. id.</u> at *5& n.6, *8 (continuing venue analysis because District Courts have somewhat differed on the "precise degree" of duplication necessary and prior cases were less "arguably close calls").

27.   <u>See also</u> <u>Optical Recording</u>, 803 F.Supp. at 973 (noting that while, as a general rule, it is reasonable to have the court where the action was first filed preside over the litigation, it is "equally reasonable and practical for a district court not to defer to the first-filed jurisdiction" where the second-filed court "is in a better position to preserve judicial resources and avoid duplication"); <u>cf.</u> <u>Colo. River Water Conserv. Dist. v. United States</u>, 424 U.S. 800, 817 (1976) ("[A]s between federal district courts . . . the general principle is to avoid duplicative litigation.").

15

concludes, as set forth below, that the balance weighs in favor of transfer of this action to the Northern District of Georgia.

### 2.  Balance of Factors Under § 1404

Under 28 U.S.C. §1404(a), and as noted *supra*, this Court may, "[f]or the convenience of parties and witnesses" and "in the interest of justice", transfer this action.

As discussed above, the Northern District of Georgia expressly reserved jurisdiction to modify its Consent Judgment as to enforcement and modification of the judgment reached.  And the language of that judgment indicates that the parties and the Court anticipated that further disputes could arise regarding the color "of any grip or overwrap grip material that [Gamma used then or might] use in the future". Defendant's Memorandum of Law in Opposition at 7 (quoting Consent Judgment).  Cf. State of Nebraska v. State of Wyoming, 515 U.S. 1, 8-9 (1995) (discussing Court's retention of jurisdiction, in prior proceedings, not only as "to enforcement of rights determined" therein, but also "to *modify* the decree to answer unresolved questions and to accommodate 'change[s] in conditions'", and concluding that it encompassed "new developments" and "new rights and responsibilities").

The Georgia Court is familiar with both the parties to this action, and its previous consideration of their product infringement disputes involved detailed, and fact-intensive analysis/understanding.  The Georgia Court has also adjudicated, in the intervening years, other litigation involving alleged infringements of Unique's protected rights in the light blue color by other racquet tape manufacturers.  See, *e.g.,* Unique Sports Products, Inc. v. Babolat VS, Civ. Action No. 02-2947.  Clearly, the Georgia Court has already expended federal judicial resources

16

in learning about the individual manufacturers, racquet tape market history, product information,

and the specific manufacturing history underlying the parties' disputes; and those resources would

best be conserved by its continuing jurisdiction. See Jumara, 55 F.3d at 879 (noting among public

factors to be considered those that could make the trial easier, more expeditious, and/or less

expensive).[28]

The Court also notes that Unique, as the larger business and the one asserting protected

rights in the racquet tape products, is likely to have more material witnesses, documents and

records, all of which are principally located in Georgia.[29]  *Moreover*, although this District is

more convenient for Plaintiff's witnesses and counsel as to this action, that consideration is offset

given the significant likelihood that Defendant's related litigation regarding the scope of the

Consent Judgment will require the presence of most, if not all, of the same Gamma witnesses and

counsel in Georgia nonetheless.  It would be a greater burden on all witnesses to travel to two

different fora to testify regarding quite similar issues.[30]

---

28.  Other applicable public factors under § 1404(a) include the enforceability of the judgment;
relative administrative difficulties pertaining to court congestion; "the local interest in deciding
local controversies at home"; the public policies of the fora; and the familiarity of the trial judge
with applicable state law in diversity cases.  Jumara, 55 F.3d at 879 (citing Wright, Miller &
Cooper § 3854).

Cf. Photomedex, 2009 WL 2326750, *8 (citing Optical Recording Corp. v. Capital-EMI
Music, Inc., 803 F.Supp. 971, 973-74 (D.Del. 1992) (noting Court's familiarity with complicated
technology at issue, owing to prior similar case, in rejecting first filed rule).

29.  Under § 1404(a), private interests to be weighed include the parties' preferences, "the
convenience of the parties as indicated by their relative physical and financial condition", the
unavailability of witnesses for trial, and the situs of books and records.  See also 15 Wright,
Miller & Cooper § 3848-3853.

30.  The convenience of the witnesses has been considered a "particularly significant factor."
Kahhan v. City of Fort Lauderdale, 566 F.Supp. 736, 739 (E.D. Pa. 1983). See also Defendant's
Memorandum of Law In Support at 8-9 ("It would greatly conserve judicial resources and be far
more convenient for the parties to litigate these two issues together in one proceeding instead of
being forced to litigate similar issues, involving the same witnesses in two geographically
divergent districts.").

### 3. Declaratory Judgment Action

Transfer of this case is also appropriate given that the case *sub judice* is a declaratory judgment action.  For under the discretionary language of the Declaratory Judgment Act this Court has "no compulsion to exercise [the] jurisdiction" the statute grants; rather, it has "unique and substantial discretion in deciding whether to declare the rights of litigants."  Wilton v. Seven Falls Co., 515 U.S. 277 (1995).  In this context, the general "principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."  Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494 (1942); Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995) (quoted in Photomedex, Inc. v. St. Paul Fire & Marine Insurance Co., 2009 WL 2326750 (E.D. Pa. 2009) (rejecting asserted "first filed" preclusion and denying request to transfer to Court in which declaratory judgment action was filed, concluding that Eastern District Court which entered settlement agreement between parties on related dispute a few years earlier was more appropriate forum under § 1404(a) analysis)).[31]

For reasons discussed above, any presumption which Gamma's first filing may have created for retaining venue here in Pennsylvania is overcome by  other factors indicating that the case should be transferred, *i.e.*, considerations of judicial economy and federal comity, and the related balance of factors under § 1404(a) (including considerations of convenience, justness, and efficiency), and is also supported by this Court's discretion as to jurisdiction in a declaratory judgment action.  The Court therefore concludes that this light blue tennis racquet grip tape litigation between the parties should be transferred to the District Court for the Northern District

---

31.  Cf. Serco, 51 F.3d at 1039 (noting that first-filed declaratory judgment action is not preferred if "considerations of judicial and litigant economy, and the just and effective disposition of disputes, requires otherwise") (quoting Genentech, 998 F.2d at 937-38)).

of Georgia, the forum where all of the related claims pending between the parties can best be

resolved.[32]

 An appropriate order will be entered.


         _____
         Lisa Pupo Lenihan
         United States Magistrate Judge


Dated: November  27, 2009


cc:  Counsel of record

---

32.  Cf. Optical Recording, 803 F.Supp. at 974 (indicating that considerations of judicial efficiency and avoidance of duplication, underlying its exception to first filing rule, also applied to its analysis of transfer under § 1404(a)).